## WHITNEY *vs.* THE STATE.

1. The only reason for setting aside a verdict where a separation of the jury has taken place, is, that the jury have been tampered with, or might have been tampered with; but where the record precludes any such supposition, the verdict will not be set aside merely because one of the jury, without the permission of the court, absented himself from the other jurors for a short time.

2. Where there is any evidence having a tendency to establish a certain fact, the jury are to judge of its strength and sufficiency, and it is erroneous to instruct the jury, under such circumstances, that there is no evidence to establish such fact.

3. The defendant was indicted for horse-stealing, and his declarations were given in evidence against him. The defendant offered to prove, "that when engaged in horse-trading he was in the habit of drinking, and when in liquor was in the habit of telling inconsistent and false tales as to the manner in which he obtained his horses." *Held:* That such evidence of defendant's vicious habits of drunkenness and falsehood was properly excluded.

## APPEAL from Howard Circuit Court.

Leonard *and* Davis, *for Appellant.*

The counsel of Whitney insist that the Circuit Court ought to have set aside the verdict, and granted a new trial, for the following reasons, to wit:—

1. Because the verdict was against the instructions of the court.

2. Because the verdict was against the third and fourth instructions given by the court, on the part of Whitney.

3. Because the court erred in giving the fifth instruction asked on the part of the State.

4. Because a member of the jury separated himself from his fellows for more than one half hour, and went out of town without the consent of the court or the defendant, and not attended by an officer of the court: as to this point, see 7 Cowen, 221; 2 Leigh, 750.

5. Because the evidence offered by the defendant to prove that he was drinking at the several times when he made the contradictory statements, as to the manner he became possessed of the horse, and his usual manner of talking upon horse trades, was excluded by the court as evidence to the jury.

6. Because the court refused to give the 6th, 7th, 8th, and 9th instructions asked by the accused.

Gordon, *Circuit Attorney, for the State.*

1. The court committed no error in giving the instructions asked for on the part of the State. The three first and sixth instructions on the part of the State were given in reference to the first and second counts of the indictment, upon both of which the jury found the defendant not guilty, he therefore cannot com-

*Whitney* vs. *The State.*

plain that the court misdirected the jury in relation to the two first counts, but should the court think it proper to look into said instructions, then, I contend, that the law was well laid down by the court.— 2 Rus. on Crimes, side-paging, 177, same book, 666; Barbour's Crim. Treatise, 173, 4.

2. The court correctly refused the 6th, 7th, 8th, and 9th instructions asked by the defendant, for the reason that said instructions are based upon a partial statement of the facts, and not upon the entire facts of the case.— 9 Peters' Reports, 292, 418.

3. The facts upon which said instructions are based, are evidence from which the jury had a right to infer the guilt of the defendant.

4. There is no cause shown, in the affidavit of M. A. Ford, for a new trial.— 1 Cow. Rep., 221; 3 Cow. Rep., 355; The People *vs.* Douglass, 4 Cow. Rep., 26; 2 B. & A., 462; 1 Chit. Rep., 401.

5. The fact of the horse being stolen, and a few days afterwards found in the possession of the defendant, is sufficient evidence that he stole ·him, and it devolved upon him to prove that he did not steal him; (2 Rus. on Crimes, 177, side-paging; 2 Starkie's Ev., 450;) and the fact that the defendant gave no evidence of good character, was good evidence that he was a man of bad character.—12 Wendall's Rep., 78.

6. The court properly refused to permit the defendant to prove that he was in the habit of telling lies when trading and drinking.

7. The court properly overruled the motion for a new trial.

NAPTON, J., *delivered the opinion of the Court.*

The appellant, together with one Coleman Whitney, was indicted by the grand jury of Howard county, for stealing a horse. The indictment contained three counts; the first, charging the defendants with stealing the horse; the second, charging that some person unknown stole the horse, and that the defendants received the horse, knowing him to have been stolen; and the third count, charging that Coleman Whitney, one of the defendants, stole the horse, and that the appellant, Wade H., received the same, knowing him to have been stolen.

Coleman Whitney was not served with process: the appellant pleaded not guilty, and after a trial, was convicted on the third count, and his punishment assessed to two years' imprisonment in the penitentiary.

A bill of exceptions, preserving all the evidence, is on the record. It appears, that in the Fall of the year 1839, a negro man belonging to one Arthur Culton, a citizen of Washington county in this State, was, with his master's permission, on a visit to his wife, then living with John Whitney, in Howard county, the son and near neighbor of the appellant. The negro man had rode his master's horse, and placed him in said John Whitney's stable, from which he was taken in the latter part of September. Shortly after the horse was taken, Coleman Whitney, another son of appellant, was seen in possession of the horse, riding in the direction towards Macon county; in the afternoon of the same day, the appellant started to Macon county, on pretence of business, and was seen about five miles from home

in possession of the same horse. The appellant took the horse to Macon county, which is about forty miles from his residence, where he traded him off, after several ineffectual attempts to sell. It appears, that appellant, at Macon county, as well as elsewhere, made divers false statements as to the time, place and manner, in which he got possession of said horse. It appeared also, that appellant was drinking when he was attempting to trade the horse in Macon couuty.

During the examination of the witnesses, the appellant offered to prove, that when engaged in horse trading, he was in the habit of drinking; and when in liquor, was in the habit of telling inconsistent and false tales as to the manner in which he obtained his horses, but the court would not allow the testimony.

It appears, from the bill of exceptions, that the jury, having returned an informal and insufficient verdict, was directed by the court to return to their room and consider of their verdict; which they did, and afterwards returned a verdict, which was received by the court. It appears, that after the jury had first returned, as above stated, and when they were remanded into the jury room, one of the jurors separated himself from the jury, by going out of the court-house, and going homewards for the distance of upwards a half a mile, without the consent of the defendant or leave of the court, and without being attended by any officer, and was so absent, as aforesaid, for the space of about half an hour.

The court, at the instance of the prosecuting attorney, instructed the jury, that if they found that the horse was taken out of the possession of Culton's negro man, without the knowledge or consent of Culton or the negro, they might infer from that fact that the horse was stolen, and if he was in a short time afterwards found in the possession of Coleman Whitney, and said Whitney did not explain the manner in which he obtained possession of said horse, they might presume that he stole him; and if they further found, that Wade H. Whitney received the horse of said Coleman, knowing him to have been stolen, they would find Wade H. Whitney guilty under the third count. The court also, on behalf of the defendant, instructed the jury, that "there was no evidence that the horse was taken out of the possession of Culton's slave without the knowledge or consent of the slave." Several other instructions were given, the propriety of which is not questioned here.

After verdict, a motion was made for a new trial, upon several grounds. The two principal reasons assigned, and insisted on here, were, that the facts did not authorize the verdict, under the instructions given by the court, and because of the separation of a juror, without consent of the court. The new trial was not granted, and the refusal of the court to grant one is assigned for error.

Whether the mere separation of the jury, in a criminal prosecution, is of itself, without any misconduct in the jury, sufficient to set aside the verdict, is a question which has not been authoritatively settled. In civil suits and prosecutions for misdemeanors, it appears to be well settled in England, that the separation of the jury is not sufficient to authorize the court to set aside the verdict. Greater strictness prevailed in ancient times; but in the case of The King *vs.* Woolf and Others, (1 Chitty, 401,) the subject was much considered by the Court of King's Bench, and the authorities examined, and all the court refused to set aside a ver-

dict in a prosecution for a misdemeanor, because of a separation of the jury with the permission of the court. It was also held in that case, that it can make no difference whether the separation is by consent of the court or not, so far as the rights of the defendant were concerned. The doctrine in King *vs.* Woolfolk was applied, by the Court of Errors in New York, to cases of felony, in The People *vs.* Douglass; (4 Cowen, 23;) but in Virginia, the Court of Appeals, in the case of Commonwealth *vs.* McCaul, (Virginia Cases, 271,) seemed inclined to adopt the stricter rule. To lay down any general rule, applicable to all cases, would, perhaps, be difficult; at all events, it is unnecessary in this case, where, I think, the principle has no application whatever. The only reason for setting aside a verdict, where a separation of the jury has taken place, is either that the jury have been tampered with, or might have been tampered with. Here the record precludes any such supposition. It appears, that the verdict had been reported, finding the defendant guilty, and inflicted his punishment before the juror absented himself: and when the verdict was finally rendered in proper form, it was not different from the former verdict, so far as the rights of the appellant were concerned. The separation of the juror was purely accidental, and could not, by any possibility, have any influence on the verdict. It would be going further than any case I have seen, if the court would set aside this verdict for such a cause.

The refusal of the court to permit the appellant to give proof of his vicious habits of drunkenness and falsehood, we are of opinion, was correct.

The instruction given by the court, at the instance of appellant, that there was no proof that the horse was taken out of the possession of Culton's slave without the knowledge or consent of such slave, was erroneous. There is no obligation on a court to give such instructions. If any evidence was offered, having a tendency to establish that fact, the jury were to judge of the strength of such evidence and its sufficiency. In this case there were certainly facts in proof, from which a jury might have inferred that the horse was stolen, and so the court had very properly told the jury. Whether the slave of Culton was privy to the larceny or not, was a matter of no sort of consequence. The jury was to judge from all the circumstances attending the transaction, whether this was a felonious taking or not; and the total absence of any evidence on the part of the appellant to account for his possession of the horse, and his contradictory statements, relative to the person from whom he obtained him, (in no one of which, however, was there any pretence of having obtained him from Culton's slave,) were circumstances from which a jury were well warranted in finding the verdict which they did. Whilst the State might complain of this instruction, the appellant cannot. It placed his case in a more favorable light before the jury than the facts in evidence justified. The judgment of the court will therefore be affirmed.