Compton v. Arnold.

PETER COMPTON, Plaintiff in Error, *vs.* JAMES R. ARNOLD, Defendant in Error.

1. *Practice—Trials—Jury, separation of—New trials.*—The separation of the jury, even in criminal trials, is no ground for a new trial, when there is no ground to suspect that the jury has been tampered with.

*Error to Washington Circuit Court.*

*G. I. Van Alen,* for Plaintiff in Error.

I. It was error for the court to go into the jury room, and converse with the jurors about the case, in the absence of, and without the consent of, plaintiff. (Moody vs. Pomeroy, 4 Denio, 115, and cases cited.)

II. It was error to allow the jury, after they had been charged and sent out to their room, to separate and mix with the people and witnesses, and hear the case discussed out of court. (5 Cow., 283.)

*Detchemendy & Arnold,* for Defendant in Error.

I. The action of the judge, or the conduct of the juryman, constitutes no ground for reversing this judgment.

VORIES, Judge, delivered the opinion of the court.

This action was brought before a Justice of the Peace to recover a mare, alleged to be of the value of seventy-five dollars, with damages for her unlawful detention.

The plaintiff recovered a judgment before the justice, from which the defendant appealed to the Washington Circuit Court. In the Circuit Court judgment was rendered in favor of the defendant, and the plaintiff has brought the case here by writ of error.

· The only error insisted on in this court, as a ground for reversing the judgment of the Circuit Court, is the refusal of the Circuit Court to grant the plaintiff a new trial, upon his motion for that purpose. The ground relied on, in the plaintiff's motion for a new trial, was the misconduct of the judge who tried the cause, and of the jury while they were considering their verdict, after the case had been closed and submitted to them. It appears by the affidavits filed with the mo-

tion for a new trial, that the trial was closed and the case finally submitted to the jury about five o'clock in the evening, that, when the jury retired under the charge of an officer, the court took a recess until seven o'clock, when the court room was vacated; after this the jury for some reason occupied the court room. The judge of the court returned at seven o'clock, at which time neither of the parties were present. The judge opened the door of the court room, and finding the jury in the room, he spoke with some members of the jury, and finding that they had not agreed, he told the foreman of the jury, in presence of the officer who had them in charge, that if they agreed by ten o'clock, that they could seal up their verdict and return it into court in the morning; but if they failed to agree by ten o'clock, they might then retire to their respective rooms for the night, and he then directed the deputy sheriff to adjourn court until nine o'clock in the morning. It is farther shown by the affidavits, that the jury remained together up to ten o'clock at night, at which time they separated and went to their respective lodgings, where they remained until morning, when they assembled and made up a verdict and returned it into court. It is also shown, that one of the jurors, after the jury separated, called at a saloon, and remained there a short time, and that there were two persons in the saloon discussing the evidence in the case on trial, in hearing of the juror or where he might have heard it.

This constitutes the whole misconduct, either on the part of the court or jury, complained of. We see nothing to complain of in the conduct of the judge. After taking a recess, evidently to see if the jury could not agree before a final adjournment, he returns to the court room, and finds that the jury had been placed in the court room by the officer having them in charge. In place of driving the jury out of the room, and resuming his seat on the bench, and then having the jury formally called into court to inquire if they had agreed, he dispenses with this formality, directs the sheriff to adjourn court until the next morning, and directs the foreman of the

jury, that if there was no agreement by ten o'clock at night, the jury could be permitted to retire to their respective homes or lodgings until morning. This was, to say the most of it, only an informality; there is not even a pretense in the affidavit, that the judge had a word of conversation with the jury about the cause on trial, and there is no doubt that if the court had been formally in session, it had the right in its discretion, to permit the jury to separate, even without the consent of the parties. (Grah. and Wat., New Trials, 81 *et seq.*)

In reference to the misconduct of the juror it is only shown, that, after the jury separated at ten o,clock, he called at a saloon; it is not shown how long he remained, but it is shown, that while in the saloon, two persons there were discussing the evidence in the case on trial, and that it was in the hearing of the juror. It is not even shown that the persons discussing the evidence in the case directed their conversation to the juror, or that they even knew that the juror was in the room, nor is it shown that the juror paid any attention to the conversation, or that he remained there for any length of time. In such case we will not presume that there was any attempt to bias the mind of the juror. Neither of the parties was present, and there is nothing to show that anything improper was introduced, nor were there any circumstances in the case to lead to, or create, any suspicion that anything improper was intended. It has been often held by this court, even in criminal cases, that the separation of a jury was no ground for a new trial, where there were no grounds to suspect that the jury had been tampered with. (State vs. Harlow, 21, Mo., 446; State vs. Brannon, 45 Mo., 329; State vs. Matrassey, 47 Mo., 295; and see also Grah. and Wat., New Trials, *supra.*)

It is very desirable, that the forms of the law should be adhered to in the trial courts, and that courts and juries should conform to the strictest rules of propriety, so as to obtain the highest respect for their decisions; but cases cannot be reversed for mere technical informalities; if so, it would place it in the power of designing parties to lay the foundation for

new trials in almost every jury trial. This judgment must be affirmed.

The other judges concurring, the judgment is affirmed.