State v. Carlisle.

STATE OF MISSOURI, Defendant in Error, *vs.* JOHN T. CARLISLE. Plaintiff in Error.

1. *Practice, criminal—Separation of jury—Effect of.*—The separation of a jury in a criminal cause, will not vitiate the verdict, unless it further appear that they have been tampered with, or have been guilty of some improper conduct.

2. *Evidence—Confession made while in charge of an officer—When admissible.*—The mere fact that a prisoner is in charge of an officer at the time a statement or confession is made, is not sufficient to render the same inadmissible in evidence. It must further appear that it was induced by hope, on the one hand, or by fear or intimidation on the other.

3. *Evidence—Deposition—Signature of witness—What sufficient.*—Where, from any cause, a deponent is unable to sign his own name, his signature written by another, at his request, is, in effect, a signing by himself, and is a sufficient compliance with the statute. (Wagn. Stat., 1078, § 25.)

4. *Evidence—Admissions—Other statements must be taken in connection with.*—To entitle admissions to be received in evidence, they must be taken together with all that was said at the same time and place, whether the remainder be against or for the person making them. But it is for the jury to attach what credit they see proper to the different statements, or parts of statements, both *pro* and *con.*

*Error to Saline Circuit Court.*

*Jno. P. Strother,* for Plaintiff in Error.

I. The court erred in admitting the statement of Wecker, taken in the preliminary examination, for it was not signed by him, and we have only the statement. The court erred in allowing the jury to separate. Whitney vs. State, (8 Mo., 165) was a larceny, not a murder case. In State vs. Burns, (33 Mo., 483) the jury had already found a verdict before they separated, and then only one left. This case was also larceny, and the court blindly followed Whitney vs. State, without argument. But in neither of those cases, was there any such separation as in this. Here the jury are allowed for two days and nights to roam about town, when the very air was pestilential with prejudice and invective against a man on trial for his life. It is time the Circuit Court were taught that this cannot be tolerated. The prisoner is afraid to object to a separation, because that would at once prejudice the mind of the jury against him.

*H. Clay Ewing and S. J. Davis*, for Defendant in Error.

I. It is the settled law of this State, that the mere separation of the jury in a criminal case—without proof of misconduct or of the fact that they have been tampered with—is no ground for new trial in the Circuit Court, or for reversal in the Supreme Court. (See State vs. Harlow, 21 Mo., 446; State vs. Igo, 21 Mo., 459; State vs. Brannon, 45 Mo., 329; State vs. Matrassey, 47 Mo., 295; Compton vs. Arnold, 54 Mo.,149; State vs. Barton, 19 Mo. 227; Whitney vs. State, 8 Mo., 165; State vs. Mix, 15 Mo., 153.)

II. The mere fact that the prisoner was in the custody of an officer, makes no difference, when no undue influence is used. (State vs. Simon, 50 Mo., 370; Green vs. State, 13 Mo., 382; State vs. Martin, 28 Mo., 530.)

III. The statements made by the prisoner in this case are not confessions of guilt, but statements made in denial of guilt, and the only rule in such cases is, that the whole statement should go to the jury. (See instructions in Green vs. State, 13 Mo., 382.)

IV. The statement made by the deceased, before the committing magistrate, in the presence of the prisoner, was admissible as evidence on the trial. (See State vs. McO'Blennis, 24 Mo., 402; State vs. Baker, 24 Mo., 437; State vs. Houser, 26 Mo., 431; State vs. Harman, 27 Mo., 120.)

The law does not require such statements to be signed by the witness. (Wagn. Stat., 1077, § 18; Rex vs. Flemming, 2 Leach's Cr. Cas., 3 Ed., p. 996; Rex vs. Osborn, 8 Car. & P., 113; Comm. vs. Richards, 18 Pick., 434.)

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted for killing Geo. Wecker, and was convicted of murder in the first degree. The evidence against him was mainly circumstantial, but it formed a chain which unquestionably supports the verdict, and as the facts were for the jury, we have only to see whether the court ruled correctly on points of law.

One of the principal objections raised is; that the court permitted the jury to separate after they were impaneled, and whilst the evidence was being introduced. The evidence shows that this separation was consented to by both parties, and it is not in anywise shown that the jury were guilty of any misconduct, or that they were in the slightest degree tampered with. The rule has been consistently acted upon in this State that a mere separation of the jury will not vitiate a verdict, unless it is made to appear that the jury has been tampered with; or that they have been guilty of some improper conduct. (Whitney vs. State, 8 Mo., 165; State vs. Mix, 15 Mo., 153; State vs. Barton, 19 Mo., 227; State vs. Harlow, 21 Mo., 446; State vs. Igo, *Id.*, 459; State vs. Brannon, 45 Mo., 329; State vs. Matrassey, 47 Mo., 295.)

In the case of the State vs. Igo, *supra*, Leonard, J., in delivering the opinion of the court, after referring to various cases holding that a separation of the jury will not render a verdict bad in the absence of misconduct, remarks: "This court has heretofore acted on the principle, and we are not disposed to depart from it. * * * Indeed, we think, no other rule could be adopted upon the subject consistent with a proper and efficient administration of the law. When the verdict is such as the court thinks ought to have been rendered upon the law and evidence, and no improper influence has been exerted in any manner over the jury, nor any just grounds for suspecting any such influence, it would seem to be but trifling with the administration of the criminal law of the land, to set aside a verdict upon the mere possibility that the jury may have been improperly influenced."

As the court can set aside a verdict when it is contrary to either the law or the evidence, the rule established is certainly the best for the administration of criminal justice.

It is insisted that the court committed error in permitting one Phillips, who was deputy constable, and who had the prisoner in custody, to give evidence of certain statements made by the prisoner. But the evidence is positive and pointed that no threats or inducements whatever were made

by the officer or held out to the prisoner, and whatever statements were made were merely voluntary. The mere fact that a prisoner was in charge of an officer at the time a statement or confession was made, is not sufficient to render the same inadmissible in evidence; but it must further appear that it was made or induced by the flattery of hope, or extorted by fear or intimidation. (State vs. Simon, 50 Mo., 370.) As there was an utter absence of any influence whatever, calling forth or inducing the statement, the evidence was clearly admissible.

On the trial the State offered in evidence the testimony of Wecker, the deceased, taken upon the preliminary examination before a magistrate. This was objected to because it was not signed by the witness.

The objection was overruled and the testimony was admitted. The record shows that the witness' name was signed to the evidence by another person, at witness' request, he being too weak to sign the same. I am inclined to the opinion that this would be a sufficient signing. When a person is unable from any cause to write his own name, and requests another to do it for him, and in his stead, this is a signing by himself. The statute (2 Wagn. Stat., p. 1078, § 25) declares, that the evidence given by the several witnesses examined shall be reduced to writing by the magistrate, or under his direction, and be signed by the witnesses respectively. But this signing is to be done in the usual way. A manual signing by the witness himself is not an absolute requisite, when it is shown to be a physical impossibility. In case the witness does not know how to write, or his arm is disabled, or from any cause he does not possess the ability to perform the act, he may request another to do it for him, and that will be sufficient. That the evidence was admissible is conclusively established by the former decisions of this court. (State vs. McO'Blennis, 24 Mo., 402; State vs. Baker, Id., 437.)

The certificate of the committing magistrate clearly shows that defendant was present when the examination was had

and the testimony taken, and the court therefore ruled correctly when it refused to exclude it.

The counsel for the defendant objects to the action of the court, in giving the second instruction asked for by the State, and in refusing to give the third instruction presented by the defendant.

The second instruction given for the State, was as follows: "In considering what the defendant said after the fatal act, the jury must consider it all together. He is entitled to the benefit of what he said for himself, if true, as is the State to the benefit of anything he said against himself, in any conversation proved by the State. What he said against himself, the law presumes to be true, because against himself. But what he said for himself, the jury are not bound to believe because said in a conversation proved by the State. They may believe it or disbelieve it, as it may be shown to be true or false, by the evidence in the case." This instruction, though somewhat amplified, is the same, in substance, as the one given in the case of Green vs. The State, (13 Mo., 381.) and approved by this court. Though it is generally true that a party's admissions against himself are true, else he would not make them; yet to entitle them to be received in evidence, they must all be taken together, as well the part that is for him, as that which is against him. For though some part may contain matter favorable to the party, and the object is only to ascertain that which he has conceded against himself—for it is to this only that the reason for admitting his own declaration applies, namely, the great probability that they are true—yet, unless the whole is received and considered, the true meaning and import of the part which is good evidence against him, cannot be ascertained. But though the whole of what he said at the same time, and relating to the same subject, must be given in evidence, yet it does not follow that all the parts of the statement are to be regarded as equally worthy of credit; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in

his own favor, as those made against him. (1 Greenl., § 201.) The instruction, though liable to some verbal criticism, was in substance correct.

The third instruction which, it is contended, the court erred in not giving for the defendant, told the jury that, " all the facts established in evidence, must be consistent with the theory of defendant's guilt, in order to conviction, and if they are not so, the jury must acquit." The court had already instructed the jury, at defendant's request, " that, in order to convict the defendant upon circumstantial evidence alone, the circumstances tending to show his guilt, should be established beyond a rational doubt, by the evidence in the cause, and when established, should point so strongly to the guilt of the defendant as to exclude any other reasonable hypothesis." After the giving of this instruction, we are unable to perceive any necessity, or even propriety, in giving the one refused. The one given was clear and explicit, and covered the whole law, and the one refused was entirely unnecessary.

A careful examination of the whole record, and of all the points raised, has fully convinced us that there is no error justifying an interference, on our part, with the judgment, and it must therefore, be affirmed: All the judges concur.